2-24-0310, people of the state of Illinois plaintiff Apolline, you were shot at the pole defendant out. Arguing on behalf of himself, Mr. Drew Wallenstein. Arguing on behalf of Apolline, please stand up. Mr. Wallenstein, are you ready to proceed? Good morning, may it please the court, counsel. Again, my name is Drew Wallenstein, I represent the appellant Rashad Cole. This case concerns his conviction for allegedly obstructing his arrest by ignoring an order related to a traffic stop where no potential arrest and no traffic stop actually existed. To the second point... How do we know there would be no potential arrest if the police officer is not allowed to complete the stop? Well, there would be no potential arrest because of the nature of the offensive issue, which was squealing the tires. A very minor misdemeanor in the circumstances in which it occurred. It would have been wholly unreasonable for the officer to arrest him. Is it a misdemeanor or petty offense? I believe it is a misdemeanor, though I'd have to double check. It's a minor traffic code violation, which we could all reasonably expect would have resulted in a citation. I think actually his behavior on the driveway indicates that he testified? He didn't testify, did he? He being the officer? No, at trial. Did the officer testify? No, the defendant didn't testify. Correct. So, you're just saying that we should interpret his behavior on the driveway as him not knowing that he was going to be issued a citation? Yeah, well, my understanding is his behavior indicates that, shows that his lack of knowledge. He did not ever submit to the authority. He walked around completely freely. He moved to go into the car. He was gathering his things. That was the behavior of the other two gentlemen standing there. He also ignored the officer, didn't he? Correct. I would say he basically just ignored the officer's presence, acted like this was a voluntary interaction that he didn't want to interact with, went along his business and tried to go in the house. And that's... He ignored not just the officer's verbal command, but the oscillating lights on the squad car, which can be seen both in the squad car video before the vehicle arrives and also on the squad car or on the body cam footage, both. So, it's clear that any reasonable person in that vehicle would recognize that a police officer is there for some purpose. Well, I would respectfully disagree on a couple points. Firstly, he wasn't actually in the vehicle at the time. He was in the vehicle when the police officer was pulling in. I watched the video a few times. I disagree. If you watch the video, I believe the passenger is only slightly in the car. One person is exiting the right rear passenger side and the defendant has not yet exited the driver's side. I believe the defendant is standing on the driver's side at the time. You'll have to watch it again. On this point, I would say, yes, watch it again. Essentially, what difference does it make? Well, I think it makes a difference... Is there some other red shirt getting out of the driver's side of the car? Well, I would say he was already standing out at the time. At the time that the video goes, he's about a block away, he's driving. He doesn't actually see the car pull in. By the time he makes the turn... He sees the vehicle pulling in, he saw it out of the side. The squad car video, his testimony was it only shows what's in front. Yes. Yes, but what we see in the squad car video is he pulls around at that time. By the time his car actually pulls up, two of the three people are out of the car. The car is running, the lights are on. I disagree that the car is running. The brake lights are reflected off the driver's door. There's no driver in the driver's seat. So I would disagree that the car was running. And as I said in my reply brief, his response to me said the car was running, which I agree, but... Let's say that your interpretation is accurate. What difference does it make? The police officer is entitled to complete a stop. But he didn't complete a stop. He was denied the opportunity to complete the stop because your client ignored him. Right, but he wasn't required to follow any of those commands. Say, come here, red shirt. Under Illinois law, isn't the driver of a motor vehicle who is subject to a stop required to produce, at the request of the police officer, driver's license, registration, proof of insurance? He wasn't the driver of a motor vehicle at the time. The car was in complete stop. He was out of the vehicle. Also, he was found not guilty of all the driving offenses, which indicates the jury obviously did not think there was evidence to actually show he was the driver. So I would say under those circumstances, no. But like you said, the jury heard his testimony. He thought Mr. Cole was the driver, and they decided against him. How do we know that the jury just didn't apply lenity with respect to the driving violations? Well, then I would wonder why they didn't also apply the same kind of license. You could wonder, and it'll take all day, but... I mean, we have to trust that the jury heard the evidence and followed the law. That would be my assumption on that. Would you agree that the mission of a stop allows a police officer to make ordinary inquiries, checking the driver's license, whether there's outstanding warrants, the identities of the passengers, inspecting the registration, proof of insurance, and all those things? I would agree if he had submitted to a stop, yes, but he did not. So a stop never occurred, and that's a point I want to return to. The charges in the state's case require that he obstructed his potential arrest, which I'm going to again argue there was no potential arrest here, by walking away from a traffic stop. So he must have actually had to have been seized, but he never submitted to the authority of a seizure, and it was not a traffic stop. So then even if he was commanded to return, which I also disagree, I don't think he was actually commanded in any legally sufficient way, and I think most of the cases show that what the officer said was not enough to actually rise to the level of a seizure. But the state has to show that a seizure did happen, that he walked away from the seizure and then refused to return to the seizure, and I think they failed to show all of those steps. Counsel, Justice White's concurrence in Terry says a person who's subject to a Terry stop, which you would agree we at least have that here, although I think frankly that the testimony from the officer is Redshirt was driving and that car squealed its wheels. So it's, I think, arguable that there's PC for a traffic stop. So Justice White's concurrence, somebody who's subject to a Terry stop, quote, may be briefly detained against his will, it goes on to say, but not required to answer questions. Do you agree with that statement of the law by Justice White in the concurrence in Terry? I do. And why doesn't it follow that? That the stopping of the defendant was an act within the officer's authority and the, you know, walking away from that is an obstruction. Well, I have to disagree. Well, I disagree with the initial premise that the defendant was stopped. He never stopped and submitted to a door. He was constantly moving around. As we said earlier, he was basically going around. Because he ignored the police officer. Yes. I agree. He did ignore the police officer, which he was allowed to do in this case because the nature of it was an interaction and he was not ever seized. Again, my position is that the state charged this case in a very specific way. They proceeded to trial on a specific theory of the case. You know, whether or not we think, okay, this is the polite act with respect to my defendant, with respect to my client, simply that this is how a person should act with an officer, the state's case is a traffic stop happened, so that meant he had to submit to the authority and stop in a vehicle. He didn't walk away from it. So it doesn't submit that it's not a stop. Correct. You know, that may be the case for suppression, but I don't know that it matters here, Counsel, just so you're aware. Well, I mean, I think it does matter because if a seizure never occurred, it would be a separate charge of a crime that would be relevant. And, you know, while it didn't come up in the briefs, there is a case, People v. Cherry, which is a 2020 3rd District case. What's the case? People v. Cherry. Cherry? It's a 2020 ILA 3D, 17-06-22. The officer attempted a seizure, but the defendant fleed. The court found that there was not a seizure. The fleeing, and this would be my argument, the state maybe could have, I don't want to speculate what the charge would have been, but maybe the state could have charged this in some different way. Or maybe there was some other crime that I don't know exactly what it is because the state never sells it out. But the crime that is charged in this case is very specific, that he obstructed his arrest by walking away from a traffic stop. So they got to show that he was actually seized at some point, and seizure under the law requires a submission of authority. Why don't they just have to show he's subject to arrest? And then my follow-on question is, if the officer could make an arrest in a public space, then why can't he require the defendant to stay there and then following on? It's an obstruction if the defendant doesn't do that. Well, with respect to the arrest, he never attempted to arrest them. So that's what I would say in that respect. He never said, stop, you're under arrest. But the officer in this case says, and I think this goes to the earlier point I was making about the circumstances of was he going to arrest him or not for this very minor squirreling the tires, that he shows a lot of deference to how the defendant was acting throughout this interaction. I think because given the very minor nature of this offense, he doesn't want to say, stop, you're under arrest. He doesn't want to escalate it to that level because that would be, and he would have to place him under arrest. So he's trying to keep it as voluntary as possible. And then eventually I think he gets to the point that the officer is upset with the defendant, how he's acting, and that's when things kind of escalate, especially when he goes in the garage and starts yelling at him. But I think we can interpret from the circumstances, this officer was very light in how he was interacting. He wasn't telling any of the other guys to stop moving. He wasn't telling the defendant to stop moving. He kind of just let this go on. He called him. Hey, red shirt. Yes. He did say, hey, red shirt. So at least he called him to come over. Yes. And, you know, again, not citing the briefs, but in the course of finding, you know, in the course of preparing for this whole argument, I did find a case where a court, where the First Assured Court found the phrase come here was not compulsory. That's People v. Porush, and I can spell that for you, Q-U-R-A-S-H. Did you submit that to the state? I did not. I found it yesterday. Did you submit the other case to the state? I did not. I found these yesterday in the course of preparation for my argument.  But I felt like I. . . Do you know what the local rule is? I do not. Off the top of my head. But I'm only bringing it to your Honor's attention because I feel if you're going to reach the decision, you should be aware of these cases. And I'm not trying to show disrespect to the state or ambush them. I feel a case that talks about the same phrase that we're talking about, if I'm aware of it. . . You can always request supplemental briefing. If that's necessary or a motion to cite additional authority. . . Right. I will be happy to file that. But as I said, I found this yesterday. Well, yesterday you had time to notify the state and ask us this morning if you could cite additional cases. I apologize for not being aware of that. It didn't come up in my preparation. So, again, I apologize. In the future, make sure you do that. Absolutely. With respect to. . . Additionally, as I said before. . . Also, the circumstances don't indicate that he actually subjectively knew that he was under. . . He was facing a traffic stop, given the circumstances. He was not in a car. He was walking around freely. He was not walking around. . . My notes. . . This is my review of this recording. Both the in-squad video and the body cam footage show men getting out as the officer approaches on foot. He sees who the driver is. He knows the driver is the red shirt. Again, I think you and I just are disagreeing on. . . Well, I'm going to watch it again. Yeah, I. . . The interpretation is inconsistent with the jury's finding. My interpretation is inconsistent because my interpretation. . . The jury found that he was not the driver. So, my interpretation seems to be more consistent. With respect. . . Now, even if he was not the driver, the police officer has the right. . . And the United States Supreme Court has said that the police officer controls the movements of the driver and the passengers. Regardless of whether he was a passenger or a driver. The police officer controls the movements of the passenger and the driver. That is the law of the land. Right, but the officer did not do that. That's my first. . . Because the officer never did that. Never attempted to actually control their movements. They were. . . As I said, they were walking around, gathering their stuff, moving mouths. So, he never did do that. When he said, come here. . . And he said, hey, red shirt. Yeah, and said that. . . Come here. . . You know. . . He. . . You know. . . He didn't say this, but. . . No. And he kept. . . He just kept walking. Like, if I stepped out of this courtroom on the street. . . Officer comes up to me and says, hey, redhead. Come talk to me. No. And I just keep walking on my business. You're not. . .  You're not in a vehicle. And a vehicle stop is a different scenario because of the dangerousness. Well, I would say. . . The inherent danger of traffic stops. Yeah. Well, I would say that, you know, in this circumstance. . . The danger was kind of created by the officer himself. By pulling them onto a private driveway. Going into a guy's garage. And also, I'd submit again. . . The stop. . . The traffic part of this is over. They were out of the car. So, the traffic part ended. Now, maybe it could have been some other kind of stop. Just the officer didn't do that. And the state didn't prosecute Mr. Cole based on a theory of. . . The officer attempted or did stop you on a different kind of stop. And you walked away from that stop. It's a very specific charge of. . . You are the traffic stop. So, he had to have actually been seized and stopped. Which never happened. And, in fact, the state cites a case. . . Which I find to be actually pretty helpful. It's an unpublished case. People vs. Profit. In that case, it has some similarities where. . . The defendant keeps walking away. The officer keeps saying things like. . . Hey, I need to talk to you. I need to talk to you. And the court only held it as a seizure once the defendant actually stopped. Made a full stop, turned, and then that was the seizure. If there are no further questions, I will. Thank you. You'll have an opportunity for a rebuttal. Thank you. Ms. Siever. Good morning, Your Honors. May it please the Court, Counsel. My name is Jenna Siever on behalf of the people. Ms. Siever, you can. . . You can. . . Oh, sorry, not going to. Yeah, move that down just a bit. Thank you so much. Is that better? Better. Okay. And I can see you. Okay. So, first, I'd like to just briefly address what elements the people were required to prove at trial. And then discuss Officer Taylor's authorized act, the traffic stop, and defendant's knowledge that he obstructed Officer Taylor's performance. On appeal, the defendant only raises a sufficiency of the evidence claim here. He does not raise a jury instruction or an issue with the jury instructions. I find it's very important to be clear here that the Court specifically issued IPI-22, which detailed what the state needed to prove in order for the jury to find defendant guilty. And then when an IPI applies, it shall be used unless the Court determines that it does not accurately state the law. The defendant at no point has objected to that jury instruction, either at trial or on appeal. And the Court, of course, found that it did accurately state the law. And since defendant failed to either raise an objection to those jury instructions, either at trial or here on appeal even, this Court can only solely consider what elements were included in the jury instructions, which is that defendant or Officer Taylor was a peace officer, that the defendant knew Officer Taylor was a peace officer, and that defendant knowingly obstructed the performance by Officer Taylor of an authorized act within his official capacity. There's no dispute on appeal here that Officer Taylor was a police officer and that defendant knew that. And moving to Officer Taylor's authorized act, the standard here is viewing the evidence in the light most favorable to the people. A defendant's interpretation of what the video said or what he thinks the video says, frankly, doesn't matter. We have to construe it in favor of the people. And as Justice Burkett pointed out, the jury, of course, did not interpret it that way that defendant interprets it. Defendant also ignores a lot of Officer Taylor's testimony, which is that he saw the car still in the street when he was approaching and it backing into the driveway that the car was on. And you can even see the lights still on in the video. And you see defendant and the other two passengers in the car getting out at the beginning of the video. Officer Taylor also testified that the angle of his dash cam did not show the reversal from the street into the driveway because of the angle of his camera and the angle of the house. Now, that is credible testimony. The jury, of course, found that testimony to be credible when they determined that there was an authorized act in this case. So when Officer Taylor came to the house and he had his overhead lights activated, he essentially stopped the car, if we want to consider it that way. But either way, even if we accepted defendant's versions of the facts that he believes that the car was parked, it was off, they were already halfway in the house, it doesn't matter. Officer Taylor could still conduct this traffic stop. If you look at actually even the case of Baskerville, that was a Supreme Court case, the underlying facts of that case are actually almost identical to what we have here. In that case, the officer noticed the defendant committing a traffic violation. He pursued the defendant to her home. She parked her car in the driveway. She got out, and the officer ordered her back to her car. She ignored him, and the fact finder in that case found her to have obstructed the officer's attempt to conduct a traffic stop. You say Baskerville's instructive in this case. How is that when the wife didn't appeal? The underlying facts of the case still apply. It was included not only in their background, but also in their analysis. I do understand that the appeal did have to do with the husband giving false information. So if a trial court at some point made a ruling, then somehow that is instructive to the appellate court that it's a proper ruling? I understand what you're asking, Your Honor, but what I'm trying to illustrate here is that there wasn't an issue with the fact that this traffic stop occurred after the defendant had parked the car and got out. They were still able to conduct a traffic stop at that time. Koch's second district case, that's the case, I think, with the runaway? Yes. I understand that refraining from physical action or failing to cooperate with the police is generally not considered the same as resisting or obstructing. Is that a problem for you in this case? No. You said it was Koch, correct? Yes. The facts of Koch are completely different from this case. In Koch, the defendant, and I believe it was the runaway, were already inside of the home. The doors were locked by the time the police came. Here, what makes this so different is that defendant has just pulled into the driveway. He's just getting out of the car when Officer Taylor pulls up. They're in the driveway for this entire interaction before he obstructs Officer Taylor. That's different. This is, as I cited in a couple of cases, I believe Scott was one of them, that the driveway can be considered a public place in situations like this. But not the garage? Not the garage, Your Honor, that's correct. But the obstruction already occurred before Officer Taylor attempted to go, or sorry, did go in the garage. And so because, so there was, there was a traffic stop in this case because Officer Taylor, he had his, he noticed the car still going by the time it got into the driveway. He had his overhead lights activated. Actually, Officer Taylor, in fact, did testify to the fact that he put on his overhead lights to communicate, or to communicate that this was, in fact, a traffic stop. And then, so that right there should have been defendant's indication that he needed to stop. He didn't. Defendant continues. But then as soon as Officer Taylor gets out of the vehicle, he immediately identifies defendant. He knew defendant was a driver. He watched him get out of the car in the driver's seat. And he says, hey, red shirt, come talk to me. I mean, that conduct is, he's solely talking to defendant at this point. Defendant is a driver. He wants to investigate this traffic stop. Come talk to me. It was not a question. It wasn't a suggestion. That defendant was free to ignore. Defendant did ignore it, but he wasn't free to. And I think a reasonable person, in conjunction with the fact there's a police officer asking you to talk to them, the overhead lights are on, that you should talk to them. But even after that, he ignored him a few times and defendant responded. So defendant was aware that this officer is talking to him and only him. He says, come talk to me. Don't go inside. That was a direct command synonymous with saying stop. Stop. You need to remain here. You need to come talk to me. As Mr. Wallenstein said, isn't it relevant that the jury didn't find him guilty of the driving offense? No. No, Your Honor. For the jury to find defendant guilty of the driving offenses, that's a different standard. People would need to prove it beyond a reasonable doubt. And what was required here for Officer Taylor to conduct the traffic stop was reasonable suspicion that this defendant committed a traffic violation. That's what he had here. That's what he testified to. It's a lower standard. And so he was able to proceed with the traffic stop. What about the defendant when he gets into the garage and he's standing on the stoop there and he tells the owner to come and open the door and he just completely ignores the police officer? Does that show what his state of mind was? That he knew that the police officer was there and wanted to talk to him about a traffic issue? Are you referring to when they're in the garage? Right. And the defendant tells, I think it's McDaniel, open the door so we can get into the residence. It's relevant, yes, but I will say that the obstruction has already occurred at that point. But again, he is aware that Officer Taylor is there specifically to talk to him because Officer Taylor has identified multiple times. That he wants to talk to defendant or red shirt, and again, he's the only person in this scenario who's wearing a red shirt in the video. And he's saying, you need to talk to me or you come talk to me now, don't go inside. He ignores that and he continues to ignore them even while they're in the garage. And it's at that point that Officer Taylor indicates that he's going to get a warrant. And likewise, defendant knew that Officer Taylor, or that he was obstructing Officer Taylor. Again, the facts here are that, as we can see in the video, defendant's aware that Officer Taylor with his overhead lights is in this driveway. He's looking at him, you can see it, there's no missing it. Officer Taylor walks up to him, identifies him, says, you need to talk to me or come talk to me now, or excuse me, come talk to me. He ignores him. Officer Taylor again responds and says, come talk to me. Defendant responds that he is, or that I am. So he knows that Officer Taylor is trying to talk to him. He knows that this officer is asserting his authority and that he needs to come and talk to this officer. He doesn't. And then again, he's given him even another command that he cannot go inside. But this is for an offense he couldn't be really, quote unquote, arrested for. It's a traffic offense. Correct. But doesn't that make a difference with respect to the obstructing? No, you can still obstruct. If I'm understanding your question correctly, you can still obstruct a traffic. So it doesn't have to be an arrest. But either way, Officer Taylor told him not to go inside and to remain there and to talk to him. So he could conduct his investigation of this traffic stop. Defendant ignores this and goes inside knowing that he's obstructing this. This traffic stop or knowing that he's obstructing Officer Taylor from any kind of investigation on his part. And also, as Officer Taylor testified to, defendant ignoring his commands to talk to him and remain in the driveway impeded his duty to investigate the traffic stop. And it's for these reasons that defendant knowingly obstructed Officer Taylor and that defendant was proved guilty of obstructing an officer beyond a reasonable doubt. If there are no other questions, people ask that this Court affirm defendant's conviction. Thank you. I have one question. How did he have to further investigate the traffic stop? So when an officer stopped somebody for a traffic violation, he needed to know. Firstly, the reason he was calling a red shirt is because he didn't know his name or didn't know his identification. So in this case, he would have needed, you know, his license to get his name, address and proof of insurance and any other maybe questions he had about the offense in this case. Thank you. Thank you. So I just want to briefly remind again, what is the nature of the charge in this case and what the state was required to prove? He wasn't just obstructing any random legal order. He was obstructing his arrest. By walking away from a traffic stop and refusing a command to return. All those things have to have been shown. In the state's argument, there wasn't much of a challenge to the fact that there wasn't going to be an arrest for this extremely minor traffic stop. So you cannot have an obstruction of justice for a traffic offense? I think you could, but I don't think the state could proceed when there was not going to be an arrest on a theory that you obstructed an arrest. I think you could maybe have some other theory that you obstructed some other. He was in charge of obstructing his arrest. That's the key to the obstruction. And the method of that obstruction was walking away from a traffic stop and not return. So the key question is, when did he obstruct his arrest? Was there going to be an arrest for schooling and attire? So that's my question again. So there could never be an obstruction in a traffic offense? No, there could. It couldn't be charged as obstructing an arrest. It would have to be charged as a different charge in proceeding a trial. Let me make that very clear. This was the theory of trial. You're not arguing variances, I understand. No, I'm not. So I guess it's important to look at the charge, and here it is. And it says, knowingly obstructed, and I'll leave some of it out. And if you have any questions as to what I'm leaving out, please ask. I'd be happy. But just for brevity's sake. Knowingly obstructed of an act within his official capacity of being the arrest of Rashad Cole, knowing Officer Taylor would be a peace officer and the execution of his official duties, in that he walked away from a lawful traffic stop while being provided with a lawful order to return to the area of the traffic stop. So I guess here would be my question. I think you're going to say, well, we didn't prove an arrest. If it's sufficient to support an obstruction that he walked away from a lawful traffic stop after being provided with a lawful order to return, then isn't the arrest of Rashad Cole surplusage? Thank you, Counsel. No, my position is it's not surplusage. That is the key thing that he obstructed. And then Justice Shostak is right. Inferentially, then, your argument is you could never have an obstruction from walking away from a lawful traffic stop. It's a key element. It has to be the arrest. Well, no, because you would just charge the obstruction of a different. So now I'm confused. Well, no, I'm saying in a different case, they could charge a different thing. It's not like it's a traffic stop. You're just saying don't use the word arrest in the trial? No, I think if you're charging your theory in the case of trials, you obstructed an arrest. Yeah, you've got to prove that. But if the remaining allegations are sufficient and the jury found them proved, then I guess I seriously wonder about your argument. Well, I mean, it seems clear to me, excuse me, Counsel, that the arrest could be surplusage or is surplusage if it's sufficient to support an obstruction to walk away from a traffic stop. If that's sufficient, why do we even get to analyze? Why bother? Why would we bother analyzing whether it was an arrest? Well, because that is the charge that he faced in what the state proceeded on the trial. They told the jury that this is what you're supposed to find in order to find him guilty. Then you are arguing variance. I don't think there's a need to add. If the murder is charged, we find one murder, but there's two in there, then is it not a murder because it didn't prove the other murder? Well, I mean, in this case, he was only found in the other murder, they didn't charge him. So there's two bodies and they didn't charge the person who actually died. They proceeded on this person who's still alive. That's kind of the circumstance. I like that way to thank you, counsel. I appreciate your answer. And again, my position is he still never submitted to a traffic stop. So even if we're ignoring this arrest part, he never actually stopped. He was never actually seized. Because he didn't stop? Correct. But that still means he wasn't seized. The state's theory is that he refused a lawful order? Correct. That is the state's theory. And your position is it was not a lawful order? Well, yes, I believe it. Well, not that it wasn't a lawful order, but under Mendenhall, my position is it was not an order that required the defendant to comply to a seizure because of the different factors and the nature of the case and looking at all the circumstances that he may have intended, he may have wanted him to comply, but it wasn't such that, okay, a seizure mandatorily would have had to have occurred just by saying, come here, run. Okay. Thank you so much, counsel. Both counsel did a wonderful job today. Thank you so much for coming before us to argue this case. We will take it under consideration.